**Certiorari Denied, December 2, 2015, No. 35,573**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2016-NMCA-005**

**Filing Date: October 1, 2015**

**Docket No. 33,628**

**GREENTREE SOLID WASTE AUTHORITY,**
**a New Mexico quasi-public agency,**

      **Plaintiff-Appellant,**

**v.**

**COUNTY OF LINCOLN, NEW MEXICO**
**and ALTO LAKES WATER & SANITATION DISTRICT**
**a New Mexico quasi-municipal agency; and**
**NEW MEXICO FINANCE AUTHORITY,**

      **Defendants-Appellees.**

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**Sarah M. Singleton, District Judge**

J. Robert Beauvais, P.A.
J. Robert Beauvais
Ruidoso, NM

for Appellant

Daniel C. Opperman
Santa Fe, NM

for Appellee New Mexico Finance Authority

Coppler Law Firm, P.C.
Frank R. Coppler
Thomas R. Logan
Nancy E. Nickerson
Santa Fe, NM

1

for Appellee Alto Lakes Water
  & Sanitation District

Alan P. Morel, P.A.
Alan P. Morel
Ruidoso, NM

for Appellee County of Lincoln, New Mexico

**OPINION**

**VIGIL, Chief Judge.**

**{1}**     Greentree Solid Waste Authority (Greentree) sued Lincoln County and Alto Lakes Water and Sanitation District (the District), seeking a declaratory judgment and an injunction. According to Greentree's petition, a series of joint powers agreements between Greentree, the County, and several municipalities, along with various other ordinances and agreements, resulted in the contractually binding transfer to Greentree of all authority to collect solid waste in the unincorporated areas of the County. Greentree claimed that the creation of the District to manage the collection of solid waste in one particular unincorporated area of the County violated these contractual commitments, and it sought an injunction precluding the District from undertaking waste collection services. Greentree also sought damages from the County for breach of contract.

**{2}**     The district court granted summary judgment to the District and dismissed all of Greentree's claims against the District and the County. Greentree appeals, and we affirm.

**BACKGROUND**

**Facts**

**{3}**     In 1991, the County, several municipalities (Town of Carrizozo, Village of Capitan, Village of Corona, Village of Ruidoso, and Village of Ruidoso Downs), and Greentree entered into a joint powers agreement "for the purpose of providing an inter-governmental cooperative agreement for the financing and operation of [Greentree]." The agreement authorized Greentree to develop and implement a solid waste system for the people living in the County. The term of the agreement was "indefinite."

**{4}**     In order to address refuse in the areas of the County that were outside the municipalities, the County enacted an ordinance in 1992 that provided for a "mandatory system of solid waste collection" in the unincorporated areas of the County not covered by the 1991 joint powers agreement. Also in 1992, the County entered into another joint powers agreement with Greentree to provide for a waste collection and management system in the unincorporated areas of the County, consistent with the 1992 ordinance. The agreement gave

2

Greentree the authority to develop and implement the solid waste disposal system for these unincorporated areas. Thus, as of 1992, Greentree managed the solid waste systems in the County's municipalities and in the unincorporated areas.

**{5}** The District came into existence in 2005, after the 1991 and 1992 joint powers agreements described above were executed. The District is a water and sanitation district created pursuant to the Water and Sanitation District Act, NMSA 1978, §§ 73-21-1 to -55 (1943, as amended through 2013), which permits the establishment of community systems such as sewer, waste disposal, and waterworks systems. *See* Section 73-21-3 (stating purposes for which water and sanitation systems may be created). The District was created to serve a specific unincorporated area of the County that primarily consisted of properties owned by members of the Alto Lakes Golf & Country Club. It appears to be undisputed that these property owners complied with the statutory requirements for establishing a water and sanitation district. These requirements included, among other things, approval of the Lincoln County Special District Commission, a special election in which a majority of qualified electors in the proposed district approved the creation of the District, and an order of the district court declaring the District to be a corporation.

**{6}** Shortly after the District was established, the County entered into another agreement with Greentree for the "collection of solid waste within the unincorporated limits of the County." The agreement stated that the County granted to Greentree "the sole and exclusive franchise, license and privilege to provide solid waste collection, removal or disposal services" for the County. Notably, however, the agreement further provided that "[t]he County includes all territory within the County except the municipalities *and that territory which is a Special District having been created pursuant to [Section] 73-21-3 B*[.] (emphasis added). The County enacted a corresponding ordinance for the mandatory collection of solid waste, which allowed the County to contract "with any municipality, county or other local unit of government, including [Greentree]," but it did not apply "to property inside the boundaries of incorporated municipalities or water and sanitation districts[.]"

**{7}** For its part, the District also entered into an agreement with Greentree whereby Greentree operated the District's solid waste services. However, the District was apparently dissatisfied with aspects of Greentree's service. As a result, several months before the agreement's expiration date of November 30, 2012, the District issued a request for proposals for continued operation of the District's solid waste services. Greentree did not submit a proposal in response to this request. The District then retained a different entity to provide solid waste services, and this lawsuit followed.

**Procedural History**

**{8}** As previously mentioned, Greentree filed a lawsuit seeking a declaratory judgment, an injunction, and damages. Greentree asked the district court to declare, among other things, that: (1) the County "contractually transferred all its jurisdiction and authority in favor of [Greentree] for the collection of solid waste in the unincorporated areas[,] including the area

designated as the . . . District"; and (2) the "creation of the [District] did not statutorily confer the exclusive power to collect solid waste within its jurisdiction[,] or if such power was conferred, it was not superior to . . . the existing contractual rights" established by the agreements between the County and Greentree. Greentree further asked the district court to enjoin the County and the District "from collecting solid waste in the unincorporated areas of [the] County" and to order that the County could not "abrogate any contractual obligation giving the exclusive right to collect solid waste to [Greentree]." Greentree also sought damages from the County.

**{9}** The District filed motions to dismiss Greentree's complaint for failure to state a claim and for summary judgment, and the County joined in those motions. The District argued that Greentree did not have an exclusive right to serve the District and that its remedy for loss of the contract for services in the District was either to protest the formation of the District or to file a grievance under the Procurement Code. In response to the motion for summary judgment, Greentree did not offer any evidence or dispute any of the District's asserted material facts. Instead, it attacked the District's proffered facts as incorrect legal conclusions or as irrelevant.

**{10}** Greentree filed its own motion for partial summary judgment, in which it argued that the statutory scheme permitting the formation of water and sanitation districts does not give such districts the exclusive right to collect and dispose of solid waste. It further argued that the County's 2008 ordinance, which excluded water and sanitation districts from mandated solid waste provisions, unconstitutionally impaired Greentree's contract rights under the 1992 joint powers agreement, which had granted Greentree the authority to collect solid waste in the County's unincorporated areas.

**{11}** Following a hearing, the district court granted the District's motions to dismiss and for summary judgment and dismissed all claims against the District and the County "because as a matter of law [the] County could not prohibit or stop formation of [the District] and does not [have] the authority to prohibit [the District] from establishing a solid waste collection system as permitted by [Section] 73-21-3(B)." The court denied Greentree's motion for partial summary judgment. This appeal followed.

**DISCUSSION**

**{12}** On appeal, we understand Greentree to present two primary reasons why it contends summary judgment in favor of the County and the District was error.[1] First, it maintains that various statutes confer exclusive authority on counties to collect solid waste and to assign that authority by way of a joint powers agreement and that the 1992 joint powers agreement

---

[1]Greentree does not address any of its arguments to the district court's order granting the District's motion to dismiss but limits its contentions to the order granting the District's motion for summary judgment. We limit our discussion accordingly.

4

assigned to Greentree the County's exclusive authority in this regard. Second, Greentree maintains that summary judgment in favor of the County and the District impairs its contractual rights in violation of the New Mexico Constitution. Greentree makes three additional arguments that we decline to address.

**Standard of Review**

{13}     "Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Self v. United Parcel Serv., Inc.*, 1998-NMSC-046, ¶ 6, 126 N.M. 396, 970 P.2d 582. Greentree concedes that the material facts are not in dispute and that the appeal presents a question of law.

{14}     This case requires us to interpret contracts and statutes. "We review a district court's interpretation of an unambiguous contract de novo[.]" *Smith & Marrs, Inc. v. Osborn*, 2008-NMCA-043, ¶ 10, 143 N.M. 684, 180 P.3d 1183 (internal quotation marks and citation omitted). "The purpose, meaning and intent of the parties to a contract is to be deduced from the language employed by them; and where such language is not ambiguous, it is conclusive." *Rivera v. Am. Gen. Fin. Servs., Inc.*, 2011-NMSC-033, ¶ 27, 150 N.M. 398, 259 P.3d 803 (internal quotation marks and citation omitted). We also review statutory construction de novo. *Lion's Gate Water v. D'Antonio*, 2009-NMSC-057, ¶ 18, 147 N.M. 523, 226 P.3d 622. "When construing statutes, [the appellate court's] guiding principle is to determine and give effect to legislative intent." *Albuquerque Bernalillo Cnty. Water Util. Auth. v. N.M. Pub. Regulation Comm'n*, 2010-NMSC-013, ¶ 52, 148 N.M. 21, 229 P.3d 494 (internal quotation marks and citation omitted). "In discerning the Legislature's intent, [the appellate courts] are aided by classic canons of statutory construction, and we look first to the plain language of the statute, giving the words their ordinary meaning, unless the Legislature indicates a different one was intended." *Id.* (alteration, internal quotation marks, and citation omitted). In addition, "the provisions of a statute must be read together with other statutes *in pari materia* under the presumption that the legislature acted with full knowledge of relevant statutory and common law." *State ex rel. Quintana v. Schnedar*, 1993-NMSC-033, ¶ 4, 115 N.M. 573, 855 P.2d 562.

**Greentree Did Not Have Exclusive Authority Over Solid Waste**

{15}     Greentree relies on several statutes and a federal case to support its contention that it had the exclusive authority to manage solid waste in the unincorporated parts of the County. It contends that two statutes "authorize[] local public bodies to organize, operate, and, when appropriate, assign the collection and disposal of solid waste generated within the jurisdiction." *See* NMSA 1978, § 3-48-3 (2003); NMSA 1978, § 4-56-3 (1971). Once the County assigned this authority to Greentree under the 1992 joint powers agreement, Greentree's argument continues, the assignment was binding and precluded the District's operation of a solid waste system in the County. Greentree claims that its exclusive right to operate in the County is supported by *Seay Brothers, Inc. v. City of Albuquerque*, 601 F. Supp. 1518 (D.N.M. 1985).

**{16}** Greentree is correct that Sections 3-48-3 and 4-56-3 permit municipalities and counties to establish systems for the disposal of refuse. Section 3-48-3(A) (permitting municipalities to "provide for the collection and disposal of refuse"); § 4-56-3(A) (permitting counties to "establish[] a system of collection and disposal of refuse"). It is further correct that the 1991 joint powers agreement gave Greentree the authority to manage solid waste in the municipalities that were parties to the agreement, and that the 1992 joint powers agreement gave Greentree the same authority in the unincorporated areas of the County. But these facts do not lead to the conclusion that Greentree had exclusive and permanent authority over the area for which the District was created.

**{17}** The 1991 and 1992 joint powers agreements were authorized by the Joint Powers Agreements Act, NMSA 1978, §§ 11-1-1 to -7 (1961, as amended through 2009). According to that Act, "two or more public agencies by agreement may jointly exercise any power common to the contracting parties[.]" Section 11-1-3. A "public agency" includes "a county, municipality, public corporation or public district of this state[.]" Section 11-1-2(A). Greentree is a "public district" because it was created pursuant to the Community Service District Act. Thus, the parties to the 1991 joint powers agreement were the County, the specified municipalities, and Greentree. The parties to the 1992 joint powers agreement were the County and Greentree.

**{18}** Notably, the District was *not* a party to either agreement because it did not exist until 2005. Under basic tenets of contract law, a contract cannot ordinarily bind an entity that is not a party to the contract. Apparently recognizing this legal precept, Greentree argues that the joint powers agreements bound the County and that the County somehow breached the agreements by allowing the District to manage solid waste in one unincorporated part of the County.

**{19}** The problem with Greentree's argument is that the District came into existence under a statutory scheme over which the County had no control. Water and sanitation districts, like the District in this case, are governed by the Water and Sanitation District Act. This Act provides that "[w]ater and sanitation districts may be created for the purpose of . . . purchasing, acquiring, establishing or constructing sanitary sewers or a system of sewage disposal, garbage or refuse disposal[.]" Section 73-21-3(B). A water and sanitation district cannot exist until it has undergone a procedurally intense process, which includes the filing of a petition signed by at least twenty-five percent of the tax-paying electors in the proposed district, Section 73-21-6(A); approval by a county special district commission, Section 73-21-8; approval of the petition by the district court after consultation with the state engineer and the environmental improvement division of the department of environment, Section 73-21-9(D); approval by a majority of votes cast in an election submitted to the tax-paying electors in the proposed district, Section 73-21-9(F)-(I); and filing of a district court order establishing the district, Section 73-21-9(J). A county's only contribution to this process is the appointment of two of the five members of the county special district commission. *See* NMSA 1978, § 4-53-3(A)(1) (1965). Thus, the County in the present case played no role in the creation of the District or the District's assumption of solid waste management.

6

**{20}**     Greentree apparently had no complaint about the County or the District during the time period when the District contracted with Greentree to perform solid waste management. Greentree's disgruntlement began when the District elected to contract with another entity to perform those services. But it is difficult to understand how Greentree had any basis for complaint because it failed to submit a proposal in response to the District's request for proposals in 2012, when the District's contract with Greentree was about to expire. It appears that Greentree's exclusivity argument in this case was an after-the-fact attempt to revive the contractual arrangement with the District.

**{21}**     We see nothing in the statutory schemes or the joint powers agreements that supports Greentree's view that it had an exclusive right to manage solid waste disposal in the area covered by the District. To the contrary, the Legislature apparently adopted the Water and Sanitation District Act to permit more densely populated unincorporated areas in the State's various counties to provide their own quasi-municipal services to benefit their residents. The Legislature permitted the creation of water and sanitation districts because they "will serve a public use and will promote the health, safety, prosperity, security and general welfare of the inhabitants of said districts." Section 73-21-1. Such districts relieve the counties in which they exist from part of the burden of providing services to unincorporated areas. In this case, the District would have considered Greentree as a potential provider of services, but Greentree failed to submit a proposal in response to the District's request for proposals. Absent such a proposal, Greentree gave up any potential contractual right to provide services in the District.

**{22}**     We are not persuaded by Greentree's reliance on *Seay Brothers*. In that case, the United States District Court for the District of New Mexico rejected a private refuse collector's antitrust challenge to ordinances enacted by the City of Albuquerque that precluded private refuse collectors from collecting refuse in the city. 601 F. Supp. at 1519. The court held that the city met the requirements of the state action exemption to the Sherman Antitrust Act. *Id.* at 1523.

**{23}**     We fail to see how the *Seay Brothers* case has any relevance to the present case. The case before us does not implicate the Sherman Act, the state action exemption, or a municipality. At most, *Seay Brothers* stands for the notion that our Legislature, in Section 3-48-2, authorized municipalities to manage their own refuse collection. It says nothing about the exclusivity of a county's contract with a waste management entity, as Greentree argues.

**The Summary Judgment Does Not Impair Greentree's Contractual Rights**

**{24}**     Greentree contends that the summary judgment in favor of the District impairs its contractual rights in violation of Article II, Section 19 of the New Mexico Constitution. It claims that creation of the District via the Water and Sanitation District Act impairs its right to collect solid waste that was contractually conferred upon it by the joint powers agreements.

**{25}** Greentree does not develop this argument, apart from citing *Whitely v. New Mexico State Personnel Board*, 1993-NMSC-019, 115 N.M. 308, 850 P.2d 1011. *Whitely* is inapposite because it held that the contract clause in the constitution does not apply where there is no contract subject to impairment. *Id.* ¶ 9. In the present case, Greentree clearly had a contract with the County, and creation of the District obviously reduced the unincorporated areas covered by that contract. But Greentree's argument fails because the purpose of its contract with the County—waste removal—is an activity that is subject to legislative regulation. And, as the United States Supreme Court said in connection with the federal constitution's contract clause, "One whose rights, such as they are, are subject to state restriction, cannot remove them from the power of the state by making a contract about them." *Hudson Cnty. Water Co. v. McCarter*, 209 U.S. 349, 357 (1908).

**Arguments That We Decline to Address**

**{26}** Greentree makes three additional arguments that we decline to address—two because they are undeveloped and one because it was raised for the first time in the reply brief.

**{27}** Greentree cursorily argues that: (1) summary judgment in favor of the District was erroneous because, in the course of creating a water and sanitation district, the residents of the area served by the District failed to establish that their solid waste management needs were unserved or underserved at the time; and (2) the district court should have granted Greentree's motion for partial summary judgment. In connection with the first argument, Greentree does not elaborate on its conclusory assertion, nor does it point to a specific provision in the Water and Sanitation District Act in support of its contention. With regard to its second argument, Greentree appears only to maintain that if summary judgment in favor of the County and the District was wrong, then summary judgment in favor of Greentree must be right. We decline to consider either of these undeveloped arguments. *See Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076 ("We will not review unclear arguments, or guess at what [a party's] arguments might be.").

**{28}** Finally, Greentree argues for the first time in its reply brief that its joint powers agreement with the County "preempted the ability of [the District] from exercising the same statutory power previously exercised by [the] County . . . on behalf of the entire unincorporated areas of the county." Ordinarily, we will not consider an argument raised for the first time in a reply brief unless it is directed to new arguments or authorities presented in the answer brief. *Mitchell-Carr v. McLendon*, 1999-NMSC-025, ¶ 29, 127 N.M. 282, 980 P.2d 65. The answer brief in this case did not discuss the concept of preemption.

**CONCLUSION**

**{29}** For the foregoing reasons, we affirm the summary judgment entered in favor of the County and the District.

**{30}** **IT IS SO ORDERED.**

_____
**MICHAEL E. VIGIL, Chief Judge**

**WE CONCUR:**

_____
**JAMES J. WECHSLER, Judge**

_____
**CYNTHIA A. FRY, Judge**